# CHARLESTON.

KINNEY v. BALT. & OHIO EMP. REL. ASS'N.

Submitted June 15, 1891.—Decided November 28, 1891.

1. CONTRACT—ARBITRATION.

A provision in a contract that all differences arising under it shall be submitted to arbitrators, thereafter to be chosen, will not prevent a party from maintaining a suit, in the first instance, in a court to enforce his rights under it.

2. RAILROAD RELIEF ASSOCIATION—INSURANCE.

   A corporation organized to afford relief to employes of certain railroad companies in one article of its constitution provides relief to those injured "by accidents while in the discharge of duty, and in the service of the Baltimore & Ohio Railroad Company, or of any other railroad company whose employes shall be admitted to the privileges of membership;" and in another article, "while in the discharge of duty in the service of either of the companies aforesaid. An employe, who from four to fifteen minutes before had quit work-for the day, while going home from work in crossing the railroad tracks was killed by cars. *Held*, that he is entitled as a member of the association to relief from it.

*J. A. Hutchinson* for appellant, cited 67 Md. Rep. 433 ; 9 Cent. Rep. 82, 84 (57 Md. 98) ; 58 Md. 463 ; 104 U. S. 252 ; Hirsch. Frat. 32, 33 ; 96 N. Y. 1 ; 94 U. S. 400 ; 33 Md. 592 ; 5 N. Y. 48 ; Ad. & Ell. 737 ; 6 En. R'y. & Con. Cas. 438 ; 5 Barn. & Cress. 560 ; 6 M. & W. 497 ; 9 M. & W. 709 ; 95 N. Y. 267 ; 4 W. H. & G. 254 ; Id. 244 ; 31 Minn. 351 ; L. R. 6 Q. B. 318 ; M. & S. 630 ; 9 S. E. Rep. 471 ; 9 Pet. 319.

*M. H. Dent* for appellee.

BRANNON, JUDGE :

Joseph E. Kinney was a member of the Baltimore & Ohio Relief Association, a corporation under the laws of Maryland, having for its object to provide relief to the employes of the Baltimore & Ohio Railroad disabled by accident, sickness, or old age, and at their deaths for their families; and, having been killed by being crushed between cars at Grafton on 20th day of October, 1884, his mother, Eliza Kinney, who had been designated as the beneficiary of his membership or policy in case of his death, brought a suit in the Circuit Court of Taylor county to compel the payment by said association of five hundred dollars as the amount which she claimed as her right under its constitution, and, the court having allowed it to her, the defendant appealed to this Court.

The first point of objection made by the appellant to the decree is that the plaintiff could not sue because of article 25 of the contitution of the association, which read thus: "Should any difference arise between any claimant for the benefits herein set forth and the committee of management,

it shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two thus chosen, whose decision shall be final." Does this article forbid Mrs. Kinney from resorting to a court of justice to enforce her demand, and limit her to arbitration?

The common-law doctrine is thus laid down in 2 Tuck. Commentaries, 31: "Though parties, on entering into a contract, agree that, if a difference should arise between them, they will refer it to arbitrators, yet a bill for specific performance of such agreement will not lie, *Street* v. *Rigby*, 6 Ves. 818; *Gourlay* v. *Duke of Somerset*, 19 Ves. 431; and it seems an action at law will not lie for refusal to nominate an arbitrator in pursuance of a covenant to refer, *Browning* v. *Wright*, 2 Bos. & P. 13. Nor is an agreement to refer a bar to a suit or action, though, if the party sues contrary to his bond of submission, he is liable to an action for damages. *Mitchell* v. *Harris*, 6 Ves. Jr. 132. Nor can a party, by an agreement to refer, deprive himself of right to apply to a court of equity. *Nichols* v. *Chalie*, 14 Ves. 271. Indeed, a mere agreement to refer, without an actual consequent reference, is no bar to an action in any case." 2 Pars. Cont. 707 states: "Both in this country and in England it has long been considered that the parties to a contract are not bound by an agreement, whether in or out of the contract, to refer questions under the same to arbitration; because they can not oust the courts of their jurisdiction by any agreement that these claims shall be submitted to arbitration." Same doctrine in Morse, Arb. 91.

Many American cases are cited for this proposition. It will be seen in *Condon* v. *Railroad Co.*, 14 Gratt. 314, that Judge MONCURE, and in *Scott* v. *Avery*, 36 Eng. Law & Eq. 1, that COLERIDGE, J., criticise the doctrine as standing on no solid reason, but say it is law too long settled to be disturbed. In the case of *Condon* v. *Railroad Co.*, the Virginia court, following the English case, feeling the unreasonableness of the rule, as I myself do, drew a distinction, which, however clear in words is not in principle, as Judge MONCURE admits that parties may by contract lawfully make the decision of arbitrators, or of any third person, a condition to a right of action, and that then such decision is a part

of the cause of action; and until such decision is made the courts have no jurisdiction, and therefore can not be said to be ousted of their jurisdiction, and they can only be said to be so ousted when an independent cause of action does or will exist which itself is referred to arbitration; and the Virginia court held that were a contract provided that work in construction of a railroad should be inspected and received by the engineer, and the amount of the work and all disputes touching the same should be determined by him, and his decision should be final, without further appeal, the contract was obligatory. But both the Virginia and English courts say that such a contract as this under said article 25 does not prevent suit in a court. So the first point made by appellant can not be sustained.

The second is that when Kinney met with the accident he was not in discharge of his duties as an employe, as the constitution of this association provides for relief only in case of accident while in discharge of duty in the service of the Baltimore & Ohio Railroad Company. Kinney was an employe, and had been on the day of this accident cleaning the outside of passenger-cars, had quit work at the hour for quitting, five o'clock, and in from four to ten minutes according to one witness, and from five to fifteen according to another, while on his way home, crossing the tracks in passing through an opening between cars, was caught between them.

Now, what was the object of this organization? It was to afford members indemnity or relief in case of accidents naturally incident to their service, accidents likely to befall them, accidents fairly attributable to that service, accidents occurring because of their being in the service, traceable to no other cause, which would not have happened but for that service. Now, here is a man who but a few minutes before had stopped work for that day, and was but going from the place of his work to his home, was yet on the railroad grounds, and in crossing the track was killed by cars of the railroad company while used in the business of the company—the very thing against which it was intended to provide—a thing within the true spirit and intent of the guaranty or insurance, if even not within

its very letter. Had he reached home, and fallen down-stairs and been killed thereby, or had he, while yet on the railroad grounds, been murdered, or killed by a wagon, or any cause foreign to the railroad operations, he would not be within the undertaking; but he is killed while performing the indispensable act of going from his work at the day's close to his home, before yet he had gotten from the railroad tracks and from among the cars, and out of the field of the transaction of the company's business. Was he not, while passing over the railroad tracks in going to and returning from his home in the course of his labors, as much in the discharge of his duties and in the service of the company as when he had the tools with which he worked in his hands, for the purposes of the question before us? It does seem to me that to say that he was not in the discharge of his duties in the service of the company, within the spirit and meaning and purposes of this organization and its constitution, would be very technical and refined. Decree affirmed.

AFFIRMED.